## UNITED STATES DISTRICT COURT FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| HOWARD UNIVERSITY, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | )     Civil Action No.: 1:06-cv-270 |
| | ) |
| METROPOLITAN CAMPUS POLICE | ) |
| OFFICERS UNION, | )     (RBW) |
| | ) |
| Defendant. | ) |
| | ) |

## PLAINTIFF HOWARD UNIVERSITY'S MOTION TO VACATE ARBITRATION AWARD

Pursuant to Section 301 of the Labor Management Relations Act ("Section 301"), 29 U.S.C. § 185, Plaintiff Howard University ("Howard University" or "University") hereby respectfully submits this Motion to Vacate an arbitration award, dated November 13, 2005 (the "Award") issued in favor of Defendant Metropolitan Campus Police Officers Union ("MCPOU" or "Union"). In support of this Motion, Howard University states the following:

### Summary of Argument

This is a case in which the Union is trying to implement a wage compensation package that even the union's own negotiator would testify was never agreed to by management. The Arbitration Award in this case should be vacated under Section 301 because the Arbitrator exceeded her jurisdiction by deciding whether the parties had formed a legally binding agreement on a Wage Compensation Package that was still under negotiation at the time the parties executed the Collective Bargaining Agreement ("CBA"). Issues of contract formation are

reserved for judicial resolution, not for an arbitrator. As such, the Award should be vacated on this basis alone.

The Arbitrator's Award should be vacated for the further reason that the Arbitrator exceeded her authority by framing and deciding an issue that was outside the scope of matters subject to arbitration under the CBA. The arbitration provision contained in the CBA specifically limited the scope of arbitrable grievances to "allegation[s] that there has been a **violation, misapplication or misinterpretation of the terms of the [CBA]**." See CBA at Article 30.1 (emphasis added), relevant excerpts of which are attached hereto as Exhibit 1. Yet, it is undisputed that the issue as framed for the Arbitrator was "whether or not the Parties had a 'meeting of the minds' on Appendix C, the Wage Compensation Package." The threshold question of whether the parties formed any agreement at all on the Wage Compensation Package does not fall within the scope of issues that are arbitrable under the CBA.

Even if the Arbitrator had not exceeded her authority by deciding the contract formation issue — which she did — the Award should not be confirmed on an additional, alternative basis. At the hearing, the Arbitrator excluded pertinent and material evidence that went directly to the very issue that she framed and decided; namely, whether the parties reached a "meeting of the minds" on the Wage Compensation Package. The Arbitrator's exclusion of this evidence, over the objection of the University, precluded the University from introducing evidence critical to the University's case and deprived it of a fair hearing. As a result of the Arbitrator's lack of jurisdiction, as well as other procedural flaws, the decision in this case did not "draw its essence" from the parties' CBA, as required under Section 301.

Accordingly, the Award should be vacated, and judgment in this case should be entered in favor of Howard University.

**Factual Background**

Howard University, which is a private institution of higher education, employs over 6,000 employees. MCPOU is the exclusive collective bargaining representative of officers, sergeants and other security personnel employed by the Howard University Campus Police department, pursuant to a CBA.

At issue in this case is a CBA, which was effective from March 27, 2002 through March 2005. In December 2003, the parties were still in negotiations over the terms of that CBA. A major issue that remained unresolved was a certain Wage Compensation Package (hereafter "The Package"), involving salary increases for members of the bargaining unit over the term of the CBA. Although the parties continued their negotiations through the month of December 2003, by December 22 they still had not reached an agreement on The Package. Consequently, the parties agreed to execute the CBA but to table negotiations on The Package until after the Christmas Holiday. With this understanding, the Union and the University signed the CBA on December 22 and December 23, 2003, respectively. Following the Holiday, the parties continued their negotiations on The Package. On February 9, 2004, Kimberly Kline, the Chief Negotiator for the Union, forwarded an email to Leroy Jenkins, counsel for Howard University, in an effort to continue negotiations on The Package.

Article 30 of the CBA contains an Arbitration and Grievance Procedure. The Grievance and Arbitration procedure under the CBA limits the scope of arbitrable grievances, as well as the scope of the authority of the Arbitrator. Specifically, Article 30 provides, in pertinent part, as follows:

> Only an allegation that there has been a **violation, misapplication, or misinterpretation of the terms of the Agreement** shall constitute a grievance under the provision of this grievance procedure.

3

(Emphasis added).

In May 2004, the Union filed a grievance under the Grievance and Arbitration Procedure of the CBA. The Union claimed that the University failed to effectuate The Package. According to the Union, The Package was part of the CBA signed by the parties. The University responded that it never agreed to The Package in collective bargaining negotiations or otherwise.

An arbitration was held on July 26, 2005 before Arbitrator Andree Y. McKissick ("Arbitrator"), an arbitrator selected pursuant to the Grievance and Arbitration Procedure under the CBA. The issue as framed by the Arbitrator at the arbitration was, "Whether or not the Parties had a 'meeting of the minds' on Appendix C, the Wage Compensation package?" The plain language of the arbitration clause limits the Arbitrator's authority to issues involving whether there has been a "violation, misapplication or misinterpretation of the terms of the [CBA]." There is no provision in the CBA allowing arbitration of whether the parties formed a legally, binding agreement on The Package. At no time did Howard University agree to "interest arbitration," either explicitly or implicitly, which would have given the Arbitrator jurisdiction independent of the CBA to determine whether or not, in the formation of the CBA, The Package should be effectuated, as a term and condition of employment within the CBA.

During the hearing, the Arbitrator also excluded pertinent and material evidence proffered by the University. In particular, the University sought to introduce the testimony of Kimberly Kline, who was the Chief Negotiator for the Union. Ms. Kline was involved in the entirety of the negotiations between the parties on The Package. The University did not intend to elicit from Ms. Kline any communications protected by the attorney-client privilege. Rather, the University intended only to elicit testimony relating to communications between her and counsel for Howard University. Ms. Kline was prepared to testify that the parties agreed to continue

4

negotiations on The Package after execution of the CBA. See Declaration of Kimberly Kline ("Kline Declaration") at ¶ 3, attached hereto as Exhibit "2". Ms. Kline would have explained the purpose of the February 9, 2004 email that she sent to Howard University counsel, Leroy T. Jenkins, nearly two months after the parties executed the Agreement, in which she inquired whether he had "any comments/suggestions regarding the [The Package]…." Id. at ¶ 4.

The Arbitrator, however, refused to allow Ms. Kline to testify as a fact witness regarding statements and representations made by the parties during open negotiations, despite the fact that both University and Union representatives were present during these negotiations. This evidence went directly to the issue of whether the parties reached a meeting of the minds on The Package.

On or about November 13, 2005, the Arbitrator issued an Award in the case. The Award sustained the Union's grievance and concluded that the parties reached a meeting of the minds and "entered into a valid, binding contract on December 23, 2003, as Appendix C [The Package] was attached…[to the Agreement]." See Award, attached hereto as Exhibit "3". The Arbitrator also issued an opinion with the Award, explaining the grounds for her decision. As one of her grounds, the Arbitrator explained as follows:

> [T]he record does not reveal any clear and concrete evidence to support the University's contentions that it was agreed to by the parties and that Appendix C would be tabled for discussion at a later date. That is, the e-mail, dated February 9, 2004, from Attorney Kline to Attorney Jenkins inquiring whether or not he had 'any comments/suggestions regarding the salary band" alone is ambiguous.

See Award at 9 (emphasis added). The Arbitrator decided the issue of whether the parties formed an agreement on The Package, despite the fact that nothing in the CBA gives her the authority to decide whether the parties reached a meeting of the minds on The Package.

On November 16, 2005, counsel for Howard University wrote a letter to the Arbitrator challenging the Award.  See November 16, 2006 Letter ("Letter"), attached as Exhibit "4".  The Letter mentioned that the University had several concerns about the Award, including but not limited to the Arbitrator's refusal to permit Ms. Kline to testify.  The Letter also requested reconsideration of the Award.  The Arbitrator denied Howard University's request.

On or about February 2, 2006, the Union filed a motion to confirm the arbitration award, pursuant to D.C. Code 16-4315.  On February 13, 2006, the University removed the action to this Court on the ground that the Union's claim for relief under D.C. Code § 16-4315 is preempted by Section 301(a) of the Labor Management Relations Act, and the claim presents a federal question, pursuant to 28 U.S.C. § 1331.  On February 13, 2005, Howard University filed a separate Complaint to Vacate the Arbitration Award before this Court under Section 301.

On March 15, 2006, the Union agreed to dismiss the removed action and proceed only on Howard University's Complaint to vacate the Arbitration Award, pursuant to Section 301.

<u>**Argument and Authorities**</u>

Section 301 covers lawsuits to vacate an arbitration award based on an alleged violation of a collective bargaining agreement between an employer and a labor organization representing employees in an industry affecting commerce, within the meaning of Section 301(a).  In deciding labor contract disputes under Section 301, federal courts are required to apply federal common law principles.  See <u>Allis-Chalmers v. Weck</u>, 471 U.S. 202, 209 (1985) (stating that the Supreme Court understood Section 301 to be a congressional mandate to federal courts to fashion a federal common law to be used to address disputes arising out of labor contracts).

Under Section 301, a federal district court may vacate an arbitration award issued in the context of a labor arbitration if the award "does not draw its essence" from the terms of the

parties' collective bargaining agreement. See Washington-Baltimore Newspaper Guild, Local 35 v. The Washington Star, Co., 1981 U.S. Dist. LEXIS 17546 (D.D.C. Apr. 29, 1981) (an award that does not draw its essence from the collective bargaining agreement may be set aside), citing Lewis v. Greyhound Lines-East, 555 F.2d 1053, 1054 (D.C. Cir. 1977) (an award must be accepted as final and binding unless it has "procedural flaws indicating the possibility of a miscarriage of justice") (emphasis added); see also Keen Mountain Construction Co. v. Chambers, 481 F. Supp. 532, 536-37, n.12 (W.D. Va. 1979) (providing numerous tests for determining when an award does not draw its essence from the parties' collective bargaining agreement).

An arbitration award must be vacated where the arbitrator exceeded her jurisdiction by deciding a non-arbitrable issue that should have been reserved for the Court's determination. See AT&T Techs., Inc. v. Comm. Workers, 475 U.S. 643 (1986); Smith Wilson Co. v. Trading and Development Establishment, 744 F. Supp. 14 (D.D.C. 1990); Montgomery Mailers' Union v. Advertiser Co., 827 F.2d 709 (11th Cir. 1987); Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51 (6th Cir. 1980) (superseded by statute on other grounds).

Federal courts have also vacated arbitration awards where the arbitrator decided issues that went beyond the scope of the parties' arbitration agreement. See Communications Workers of America v. AT&T, 903 F. Supp. 3 (D.D.C. 1995) (courts retain full authority to vacate awards that fail to confine themselves to matters within the scope of the arbitrator's assigned jurisdiction); Carson v. Giant Food, Inc., 175 F.3d 325, 329 (4th Cir. 1999) (holding that even a broad arbitration clause that generally commits all interpretative disputes to arbitration is insufficient to create an agreement to arbitrate arbitrability).

Finally, federal courts have made clear that they will not confirm arbitration awards where the arbitrator refused to hear pertinent and material evidence, if that refusal denied the party proffering the evidence the right to a fair hearing. See Gulf Coast Industrial Workers Union v. Exxon Co., 70 F.3d 847 (5th Cir. 1995) (vacating award where arbitrator excluded relevant evidence and then later used the employer's failure to present evidence on the issue as the basis for entering an award against the employer).

A.     **The Award Should Be Vacated Under Section 301 Because It Does Not Draw Its Essence From The Parties' CBA.**

The Arbitrator's Award in this case must be vacated because it does not draw its essence from the CBA between the Union and the University. Specifically, the Arbitrator decided an issue that was outside the scope of her jurisdiction and exceeded her authority by deciding an issue outside the scope of the CBA's arbitration clause.

    1.     **The Arbitrator Did Not Have Jurisdiction To Decide Whether The Parties Formed a Legally Binding Agreement On The Wage Compensation Package.**

The Award should be vacated under Section 301 because the Arbitrator did not have the jurisdiction to decide whether the parties reached a "meeting of the minds" on The Package. Such issues of contract formation are reserved for resolution by the Court. By deciding whether the parties formed a legally binding agreement on The Package, the Arbitrator usurped the Court's jurisdiction. Therefore, the Award should not be confirmed.

The federal common law of labor contracts fully supports this conclusion. For example, in AT&T Techs., Inc. v. Comm. Workers, the U.S. Supreme Court announced that it is the role of the courts to determine whether a valid arbitration agreement applies to the subject matter of the issue submitted for arbitration. Courts should not, the Supreme Court held, assume that the parties agreed to arbitrate the issue of arbitrability unless there is clear and unmistakable

evidence that they did so. 475 U.S. at 649. In <u>Smith Wilson Company</u>, this Court made clear that whether the parties formed a valid agreement, containing an arbitration clause, is a threshold issue that a court, and not an arbitrator, must decide. 744 F. Supp. at 17. Unless the parties' agreement expressly gives the arbitrator the authority to decide contract formation issues, the court must decide such issues before the parties may proceed to arbitration. <u>See id.</u>; <u>Par-Knit Inc.</u>, 626 F.2d at 51; <u>see also</u>, <u>IBEW Local Union No. 54 v. Hope Electrical Corp.</u>, 380 F.3d 1084 (8th Cir. 2004) (explaining that even if a party participates in the arbitration hearing, the party does not waive the right to challenge the substantive jurisdiction of the arbitrator after the fact, so long as the party files a timely motion to vacate the arbitration award).

In <u>Par-Knit, Inc.</u>, the court dismissed the defendant's motion to compel arbitration, concluding that it must first decide whether the parties intended to form a legally binding contract. 636 F.2d at 55. There, the parties entered into a series of oral agreements. After reaching the oral agreements, the appellee sent documents to the appellant bearing the word "Contract." Appellant's highest ranking corporate official at the plant signed the "contracts," which contained an arbitration clause. Later, a dispute arose between the parties over the quality of merchandise delivered under the "contract." Appellee sought to arbitrate the dispute. The appellant argued that it had no duty to arbitrate because the parties had not formed a legally binding contract. Specifically, the appellant argued that although its corporate representative had signed the documents, his signature was not intended to create a contract and the parties, therefore, never reached a "meeting of the minds." <u>Id.</u> at 53.

The trial court entered an order staying the proceedings until after the arbitration. On appeal, the appellate court held there was an issue of fact on the question of whether the parties

intended to create a legally binding agreement, notwithstanding the corporate representative's

signature. The circuit court explained, in pertinent part, as follows:

> The mere execution of a document, however, even assuming that it
> is executed by a corporate agent, does not negate the factual
> assertion that such signature was not intended to represent a
> contractual undertaking.

Id. at 54-55. Based on these facts, the court ruled that it must first decide the issue of whether a

contract was formed before the parties could proceed to arbitration. Id. at 55. The same is true in

the instant case.

In another case decided by this Court, Smith Wilson Co., the Court again concluded that it

must first determine whether a valid contract between the parties exists, before the parties proceed

to arbitration. The plaintiffs there strenuously denied having entered into a contract with

defendant despite the fact that a purported agent signed the contract on their behalf. This Court

concluded that, although there was conflicting evidence on the question of whether the alleged

agent's signature was intended to create contract, this threshold question must first be decided

before proceeding to arbitration. Id. at 17, citing I.S. Joseph Co. v. Michigan Sugar Co., 803 F.2d

396, 398 (8th Cir. 1986) (noting the essence of a district court's inquiry is "whether there is an

agreement between the parties at all").

In the present case, as in Par-Knit and Smith Wilson Co., the issue of whether the parties

actually created an agreement on The Package is a question for the Court, not the arbitrator. The

issue framed and decided by the Arbitrator is a contract formation issue, which is beyond the

scope of her jurisdiction. Nothing in the arbitration clause gave the Arbitrator the authority to

decide contract formation issues. Like the parties in Par-Knit and Smith Wilson Co., Howard

University has proffered evidence to support the University's position that the parties did not

intend their signatures to form an agreement on The Package. Under these circumstances, the

question of whether parties created an agreement on The Package is a question of fact that must be resolved by the Court, not by an arbitrator.   Because the Arbitrator usurped the Court's jurisdiction, the Award did not draw its essence from the CBA and must, therefore, be set aside. See Genesco, Inc. v. United Shoes Worker of America, 341 F.2d 482 (2d Cir. 1965) (concluding that no contract was formed, even though union had signed the agreement and "employers had asked the men to return to work, where the union made clear that the agreement would not be consummated until the parties resolved certain issues).

### 2.    The Arbitrator Also Exceeded Her Authority By Deciding An Issue That Was Beyond The Scope of The Arbitration Agreement

The Arbitrator's Award must not be confirmed for an additional reason.  Even assuming the parties reached a binding agreement on The Package – which they did not -- the issue of whether the parties reached a "meeting of the minds" is outside the scope of the arbitration clause contained in the CBA.   Where there is a question as to whether a particular subject is arbitrable under the terms of the arbitration clause, such question is, again, for the courts, not the arbitrator, to decide.   As the Supreme Court explained in United Steelworkers v. Enterprise Wheel & Car Corp., 363 U.S. 593 (1960), an arbitration award that decides issues which go beyond the scope of the pertinent arbitration clause does not draw its essence from the collective bargaining agreement and must be set aside.   Id. at 597; see Communications Workers of America v. AT&T, 903 F. Supp. 3 (D.D.C. 1995).

In Communications Workers, the Court vacated a portion of an arbitration award that exceeded the scope of the arbitration clause.   The arbitration clause gave the arbitrator the authority to decide whether the company had just cause to dismiss or suspend the grievant.   The clause further stated that if the company lacked just cause, the grievant was entitled to back pay and certain other benefits based on a pre-determined formula. Id. at 4.

Following the arbitration hearing, the arbitrator issued an award concluding that the company did not have just cause, but denied the grievant "back pay and other benefits." Id. at 5. The union challenged the award on the ground that the arbitrator exceeded the scope of his authority under the arbitration clause by denying the grievant the required back pay and benefits. The Court agreed and vacated that portion of the award, concluding that the award did not draw its essence from the collective bargaining agreement. Id. at 5 (noting that "courts retain full authority to vacate awards that fail to confine themselves to matters within the scope of the arbitrator's assigned jurisdiction"), citing United Steelworkers, 363 U.S. at 597.

In Montgomery Mailers Union No. 17 v. The Advertiser Company, 827 F.2d 709 (11th Cir. 1987), the Eleventh Circuit reversed and remanded an order compelling arbitration where the issue for arbitration exceeded the scope of the arbitration clause. In that case, the arbitration clause limited the scope of arbitrable issues to "all questions which may arise as to the construction of any clause of this contract, or violation thereof." Id. at 712. At issue in that case was whether the parties, through implementation of a proposal/counter-proposal mechanism, had formed a new collective bargaining agreement. According to the union, the parties formed a new collective bargaining agreement when the union forwarded a letter of acceptance to the employer. The employer argued, however, that it vitiated the union's power to accept the offer by withdrawing the offer prior to the union's acceptance. Id. at 713-14.

The union commenced an action to compel arbitration on this and other issues. The Court ordered the parties to arbitration. The employer appealed. The appellate court held that the issue of whether the parties formed a new collective bargaining agreement was not arbitrable because the dispute between the parties (i.e., whether the union "accepted" the employer's offer thereby resulting in the formation of a new agreement), was beyond the scope of the arbitration

clause. The Court noted that the agreement's broad arbitration clause did not subject the instant dispute to arbitration because "the dispute to be arbitrated must 'involve construction of the substantive provisions of the contract.'" The Court explained further that "there are no terms or provisions to be construed regarding acceptance [of the contract]." As such, the dispute was outside the scope of the arbitration clause.

In the present case, as in Communications Workers of America and Montgomery Mailers Union No. 17, the Arbitrator exceeded the scope of her authority under the arbitration clause. The general arbitration provision contained in Article 30 is not sufficient to grant the Arbitrator the authority to decide the contract formation issue. The arbitration clause only gives the Arbitrator the authority to decide allegations that there has been a "violation, misapplication, or misinterpretation of the terms" of the CBA. As the Court noted in Montgomery Mailers Union No. 17, in the present case there are no substantive provisions in the CBA that address either "acceptance" of agreements or contract formation issues. As such, the question of whether the parties formed an agreement is outside the scope of the arbitration provision, and the Arbitrator exceeded her authority under the CBA by deciding the issue.

**B.    Alternatively, The Award Should Be Set Aside Because The Arbitrator Refused to Hear Pertinent and Material Evidence At The Hearing.**

As set forth above, the Arbitrator did not have jurisdiction to decide whether the parties reached a "meeting of the minds" on The Package. By doing so, she exceeded the scope of her authority under the CBA. Assuming arguendo that the Arbitrator did have the authority to decide the contract formation issue, however, the Award should be set aside because the Arbitrator refused to hear pertinent and material evidence. At the hearing, the Arbitrator excluded evidence that went directly to the question of whether the parties reached a "meeting of the minds." The Arbitrator's failure to consider the evidence deprived Howard University of a

fair hearing and the opportunity to present its case. Federal courts set aside awards where the arbitrator failed to consider pertinent and material evidence, if such refusal deprives the offering party of a fundamentally fair hearing. Hoteles Condado Beach v. Union de Tronquistas, Local 901, 763 F.2d 34, 39-40 (1st Cir. 1985).

A fundamentally fair hearing requires that each party be permitted to present argument and evidence. See Kaplan v. Alfred Dunhill of London, 1996 U.S. Dist. LEXIS 16455 (S.D. N.Y. 1996), citing Robbins v. Day, 954 F.2d 679 (11th Cir. 1992) (overruled on other grounds). Where the arbitration does not allow a party this opportunity, the award may be vacated. See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16 (2d Cir. 1997); Gulf Coast Industrial Workers Union v. Exxon Co., 70 F.3d 847 (5th Cir. 1995).

The courts in Gulf Coast Industrial Worker's Union and Tempo Shain Corp., two cases with facts analogous to the instant action, set aside awards where the arbitrator refused to hear pertinent and material evidence. In Gulf Coast Industrial Worker's Union, Exxon fired an employee after a search of the employee's car uncovered marijuana. After uncovering the substance from the employee's car, Exxon had the substance tested. The test confirmed that it was indeed marijuana. Id. at 849. Pursuant to company policy, Exxon requested that the employee submit to a drug test. Id. When he refused, the company eventually fired him. The employee's union challenged the discharge and submitted the dispute to arbitration. Id.

The issue at the hearing was whether there was just cause to fire the employee. At the hearing, Exxon attempted to present evidence of a report which established that the substance found in the employee's car was marijuana. The arbitrator refused to allow testimony to authenticate the report as a business record. Id. at 848. In the arbitration award, the arbitrator ruled against the employer, concluding just cause did not exist to support the employee's

discharge.  The arbitrator based his decision on the fact that the report was hearsay and had not

been authenticated as a business record.  The union brought a suit under Section 301 to confirm

the award.  Exxon counterclaimed to have the award vacated.

The Court agreed with Exxon that the award must be vacated due to the arbitrator's

refusal to hear evidence of the positive drug test and subsequent refusal to permit Exxon to offer

testimony to establish the record of the drug test as a business record.  The Court concluded that

"the arbitrator [improperly] used Exxon's failure to present evidence that he told Exxon not to

produce as a predicate for ignoring the test results."  70 F.3d at 850.

In Tempo Shain Corp., the Court vacated an award where the arbitrator refused to hear

pertinent and material testimony from a corporate president concerning the parties' history of

negotiations and dealings which predated the contract entered into by the parties.  120 F.3d at 17.

In that case, the employer alleged that the parties had not entered into a valid agreement.  The

Court ruled that the president's testimony was critical in determining whether the parties created

an enforceable agreement because he was involved in the contract negotiations the entire time.

Id. at 21 (stating that parole evidence should not be excluded where its purpose is to show that

there was no agreement or the agreement was invalid).

As in Gulf Coast Industrial Worker's Union and Tempo Shain Corp., the Arbitrator's

Award in this case should be set aside.  The Arbitrator refused Howard University the

opportunity to present evidence that would be pertinent and material on the issue of whether the

parties reached a meeting of the minds, had that issue been properly before her.  The Arbitrator

then subsequently relied upon the alleged absence of such evidence in ruling against the

University.  Specifically, the University offered the testimony of Kimberly Kline, who was

formerly Chief Negotiator for the Union.  Ms. Kline was prepared to testify regarding the open

negotiations that occurred between the parties when representatives for both parties were present. Such testimony regarding open negotiations between a represented party and a third party is not protected by the attorney-client privilege. See Wilderness Soc'y v. U.S., 344 F. Supp. 2d 1, 16 (D.D.C. 2004) (explaining that in order to assert attorney-client privilege, party must show that communication with attorney was intended to be confidential and was not disclosed to any third party).

Like the proposed witness in Tempo Shain Corp., Ms. Kline was present and actively involved during the entirety of the negotiations between the parties that pre-dated and post-dated the execution of the CBA. Ms. Kline is aware that the parties never reached an agreement on the wage increases under The Package and that the parties agreed to table negotiations on The Package until after the CBA was executed. Kline Declaration at ¶¶ 3-4. Ms. Kline can also explain what she meant by her February 9, 2004 email to Leroy Jenkins, which the Arbitrator admittedly did not credit because she found the email "ambiguous". See Award; see also Kline Declaration at ¶4. Under those circumstances, Ms. Kline's testimony was critical, as only she could have explained the reason that she sent the email. Id. As the Court in Gulf Coast Industrial Worker's Union explained, such parole evidence is both pertinent and admissible where, as here, the question is whether a legally valid agreement exists. In the instant action, the Arbitrator's refusal to permit Ms. Kline to testify as to the parties' failure to reach a meeting of the minds on the one hand, and her subsequent reliance on the lack of evidence on this issue on the other hand, was wholly improper. The Arbitrator's Award must be vacated in these circumstances.

## Conclusion

The Award in this case must be vacated because the Arbitrator exceeded her authority under the CBA.  The Arbitrator did not have jurisdiction to decide whether the parties reached a meeting of the minds on The Package. This is a threshold contract formation issue that must be decided by the Court, not an arbitrator.  Furthermore, the Arbitrator decided an issue outside the scope of the CBA's arbitration clause.  Finally, the Award should be set aside, on an alternative ground, because at the hearing, the Arbitrator excluded pertinent and material evidence, over the objection of the University, that went directly to the issue of whether the parties reached a meeting of the minds.

For these reasons, the Award should not be confirmed.  Accordingly, Howard University requests that the Court vacate the Award, and enter judgment in this case in favor of Howard University.

Respectfully submitted,

Dated:  July 28, 2006

By:_____/s/_____
KEITH J. HARRISON (D.C. Bar No. 416755)
TRINA L. FAIRLEY (D.C. Bar No. 464102)
**KING PAGANO HARRISON**
1730 Pennsylvania Avenue, N.W.
Suite 900
Washington, D.C.  20006
(202) 371-6800

Counsel for Defendant
Howard University