UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

_____
                                          )
HOWARD UNIVERSITY,                        )
                                          )
        Plaintiff,                        )
                                          )
    v.                                    )         Civil Action No. 06-0270  (RBW)
                                          )
METROPOLITAN CAMPUS POLICE                )
OFFICER'S UNION,                          )
                                          )
        Defendant.                        )
_____)

**MEMORANDUM OPINION**

Plaintiff, Howard University ("University"), and defendant, Metropolitan Campus Police

Officer's Union ("Union"), are parties to a collective bargaining agreement ("CBA").  Complaint

("Compl.") ¶¶ 4-5.  The plaintiff instituted this lawsuit pursuant to Section 301(a) of the Labor

Management Relations Act ("LMRA"), 29 U.S.C. § 185 (2000) ("Section 301"), seeking to

vacate an arbitration award, dated November 13, 2005, issued in favor of the defendant.[1]  Compl.

at p. 1-2.   Currently before the Court are (1) the plaintiff's motion to vacate the arbitration

_____

[1] Section 301(a) provides:

> Suits for violation of contracts between an employer and a labor
> organization representing employees in an industry affecting commerce as
> defined in this chapter, or between any such organizations, may be brought
> in any district court of the United States having jurisdiction of the parties,
> without respect to the amount in controversy or without regard to the
> citizenship of the parties.

29 U.S.C. § 185(a).

1

award ("Pl.'s Mot."), (2) the defendant's opposition to the plaintiff's motion to vacate ("Def.'s

Opp.") and its  motion to confirm the arbitration award, and (3) the plaintiff's reply in further

support of its motion to vacate the arbitration award ("Pl.'s Reply").  For the reasons set forth

below, the Court denies the plaintiff's motion to vacate and therefore the arbitration award in

favor of the defendant is affirmed.

## I.  FACTUAL BACKGROUND

The plaintiff is a private institution of higher education that employs over 6,000

employees.  Compl. ¶ 4.  The employees working for the University's campus police department

are part of a bargaining unit represented by the Union.  Id.   The Union is a labor organization

and is the exclusive collective bargaining representative of a bargaining unit comprised of

officers, sergeants, and other security personnel employed by the University's campus police

department.  Id. ; Pl.'s Mot., Exhibit ("Ex.") 1  (Collective Bargaining Agreement) ("CBA") at ¶

1.2.  At issue in this litigation is Appendix C, the Wage Compensation Package,  of the CBA

("Appendix C ") that the parties were negotiating in the fall of 2003.  Pl.'s Mot., Ex. 1  (CBA).

Appendix C provides for salary increases for members of the bargaining unit during  the term of

the CBA.  Pl.'s Mot. at 3 & Ex. 1  (CBA) at ¶¶ 33.1-33.1.5.2. The parties disagree on whether

Appendix C was included as part of the CBA.  The University contends that when an

agreement on Appendix C had not been achieved by December 22, 2003, the parties agreed to

defer further negotiations on that aspect of the CBA until after the Christmas holiday season.

Pl.'s Mot. at 3.  The University asserts that with this understanding, the Union and the University

signed the CBA on December 22 and December 23, 2003, respectively.  Id.  On the other hand,

the Union contends that the parties' negotiations included Appendix C and that the entire

2

agreement was executed by Carla McCormick, president of the Union, on December 22, 2003, and H. Patrick Swygert, president of the University, on the following day. Def.'s Opp. at 1.

On May 6, 2004, the Union filed a grievance pursuant to Article 30 of the CBA alleging that the University violated Article 33 of the CBA by failing to compensate its members in compliance with Appendix C. Compl. ¶ 7; Pl.'s Mot., Ex. 1 (CBA); Def.'s Opp. at 1. The University responded that it never agreed to the terms of Appendix C as part of the CBA or otherwise. Compl. ¶ 7; Pl.'s Mot. at 4. Because resolution of the grievance was not resolved by the parties, pursuant to Article 30, Section 30.3.4 of the CBA, an arbitrator was selected to arbitrate the dispute. Compl. ¶ 8; Pl.'s Mot., Ex. 1 (CBA) at ¶ 30.3.4.

An arbitration hearing was held on July 26, 2005, before arbitrator Andree Y. McKissick. Pl.'s Mot., Ex. 3 (Arbitration Opinion and Award) ("Award") at 2. The stipulated issue for the arbitrator to address was: "Whether or not the Parties had a meeting of the minds on Appendix C, the Wage Compensation package?" Id. at 4. During the hearing, exhibits were offered and made part of the record and oral arguments were heard. Id. at 2. However, the arbitrator excluded the testimony of Kimberly Kline, Chief Negotiator for the Union, which the University sought to introduce.[2] Pl.'s Mot. at 4.

On November 13, 2005, the arbitrator issued her decisions. Pl.'s Mot., Ex. 3 ("Award").

---

[2] As the Chief Negotiator of the Union in 2003, Ms. Kline was involved in the negotiations between the parties regarding Appendix C. Pl.'s Mot. at 4, Ex. 2 (Declaration of Kimberly Kline) ("Kline Declaration"). Ms. Kline was prepared to testify that the parties had agreed to continue their negotiations concerning Appendix C after the CBA was signed. Id., Pl.'s Mot., Ex. 2 (Kline Declaration) at ¶ 3. Ms. Kline would have explained the purpose of the February 9, 2004 email that she sent to the University's counsel, Leroy T. Jenkins, nearly two months after the parties executed the CBA, in which she inquired whether he had "any comments/suggestions regarding [Appendix C]. . . ." Pl.'s Mot. at 4-5 & Ex. 2 (Kline Declaration) at 4.

The arbitrator sustained the Union's grievance, concluding that "the parties entered into a valid and binding, contract on December 23, 2003, as Appendix C was attached and could have been reviewed at that juncture." Id. at 1. Some of the arbitrator's grounds for her decision were the following: First, the arbitrator noted that the "objective law of contracts is that the written language embodies the terms of the agreement and will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered the contract." Id. at 8. Applying this principle of contract law, the arbitrator found that once the CBA, including Appendix C, which was submitted with the CBA for approval, was executed by the Union president and President Swygert on behalf of the University, "the [CBA] became a viable contract, absent duress, fraud, or mutual mistake . . . ." Id. at 8-9. Second, the arbitrator found that "although fraud, duress and/or mutual mistake was alleged" by the University, " there [was] no evidence to support these allegations." Id. at 9. Instead, the arbitrator acknowledged that "it would seem that a unilateral mistake was made when President Swygert failed to carefully review the [CBA], which included Appendix C, before he ratified it." Id. Third, the arbitrator concluded that "the record does not reveal any clear and concrete evidence to support the University's contentions that it was agreed to by the parties that Appendix C would be tabled for discussion at a later date." Id. Specifically, the arbitrator found "the e-mail dated February 9, 2004, from Attorney Kline to Attorney Jenkins inquiring whether or not he had 'any comments/suggestions regarding the salary bands' alone is ambiguous." Id. Fourth, the arbitrator found that "the absence of President Swygert's testimony is significant because it made it difficult to ascertain his state of mind when he signed the [CBA]." Id. at 10. Therefore, without President Swygert's testimony to ascertain his intent and state of mind, the arbitrator

4

found that his absence warranted the conclusion that "he knowingly and willingly entered [into] a valid and binding agreement when he signed the [CBA], which contained Appendix C." Id. Fifth, the arbitrator found that the "Union met its burden of proof with supporting data and testimony to show the viability of the [CBA]." Id. Sixth, the arbitrator found that based on "the totality of the events it would seem that the University fully agreed to the entire contract, except it had second thoughts on Appendix C because the total cost exceeded the $1.8 million dollar allotment." Id. at 10. In addition, the arbitrator found that since the University sought to implement the CBA before Christmas day, "in its haste, the University did not carefully review the entirety of the contract before it was signed by its President." Id.

On November 16, 2005, counsel for the University wrote a letter to the arbitrator challenging the award. Pl.'s Mot., Ex. 4 (Letter from University's General Counsel's Office to Arbitrator McKissick dated November 16, 2005) ("University Letter"). On or about February 2, 2006, the Union filed an initial pleading with the Superior Court of the District of Columbia seeking to confirm the arbitration award pursuant to D.C. Code § 16-4315 (2006). Compl. ¶ 11. Then, on February 13, 2006, the University removed the action to this Court on the ground that the Union's claim for relief under D.C. Code § 16-4315 is preempted by Section 301(a) of the LMRA, and therefore the claim presents a federal question pursuant to 28 U.S.C. § 1331. Id. ¶ 6. In conjunction with the removal of this matter to this Court, on February 13, 2006, the University filed a separate Complaint to Vacate the Arbitration Award with this Court pursuant to Section 301(a) of the LMRA.[3] Compl.

_____

[3] On March 15, 2006, the Union agreed to dismiss its claim to confirm the arbitration award that had been removed to this Court and to proceed solely on the University's Complaint
(continued...)

## II.  LEGAL ANALYSIS

"[W]hen parties to a collective bargaining agreement have agreed to submit to arbitration, the function of the court is extremely limited." Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 254 F.Supp.2d 12, 14 (D.D.C. 2003) (citing Cole v. Burns Int'l Sec. Servs., 105 F.3d 1465, 1473 (D.C. Cir. 1997) (internal citations omitted)).  Since it is the arbitrator who determines whether the moving party's position is correct, the court "ha[s] no business weighing the merits of the grievance, considering whether there is equity in a particular claim, or determining whether there is particular language in the written instrument which will support the claim."  United Steelworkers of Am. v. Am. Mfg. Co., 363 U.S. 564, 568 (1960); Am. Postal Workers Union, AFL-CIO v. U.S. Postal Serv., 789 F.2d 1, 5 (D.C. Cir. 1986).

Although "[c]ourts exercise only limited review of the merits of an arbitrator's decision in a labor dispute, [ ] they retain full authority to vacate awards that fail to confine themselves to matters within the scope of the arbitrator's assigned jurisdiction." Commc'n Workers of Am., AFL-CIO, CLC v. Am. Tel. & Tel. Co., 903 F.Supp. 3, 5 (D.D.C. 1995) (citing United Steelworkers v. Enter. Wheel & Car Corp., 363 U.S. 593, 597 (1960)).  It is a well established principle that arbitration is a matter of contract; therefore, an arbitration award must draw its essence from the parties' collective bargaining agreement.  See id.; AT & T Tech., Inc. v. Commc'ns Workers of Am., 475 U.S. 643, 648 (1986); Madison Hotel v. Hotel & Rest. Employees, Local 25, AFL-CIO, 144 F.3d 855, 857 (D.C. Cir. 1998).

---

[3](...continued)
to Vacate the Arbitration Award pursuant to Section 301(a) of the LMRA.  Pl.'s Mot. at 6.

**A.**     <u>**Jurisdiction of the Arbitrator**</u>

The University argues that the arbitration award must be vacated pursuant to Section 301 of the LMRA "because the Arbitrator exceeded her jurisdiction by deciding whether the parties had formed a legally binding agreement on a Wage Compensation Package [–Appendix C–] that was still under negotiation at the time the parties executed the [CBA]." Pl.'s Mot. at 1. According to the University, "[i]ssues of contract formation are reserved for judicial resolution, not for an arbitrator." <u>Id.</u> at 1-2. In response, the Union opines that the University waived any right it had to challenge the arbitration proceedings, having "voiced its non-arbitrable argument for the first time in this court." Def.'s Opp. at 3. In support of its position, the Union contends that the "parties . . . were entitled to arbitrate any dispute" and that the University's failure to challenge the arbitrator's authority to decide whether there had been a meeting of minds as to Appendix C amounted to a waiver of the arbitrability of that issue. <u>Id.</u> at 3-4. And the Union notes that "the parties stipulated that the issue to be decided by the Arbitrator was: 'Whether or not the [p]arties had a meeting of the minds on Appendix C . . .'" <u>Id.</u> at 1-2.

Although the parties dispute whether there was a "meeting of the minds" as to Appendix C, there is no dispute that the parties agreed to the implementation of all other aspects of the CBA, including its arbitration provision. Pl.'s Mot. at 3-4; Def.'s Opp. at 2. Grievances the parties are unable to resolve themselves are subject to arbitration under the CBA. Pl.'s Mot., Ex. 1 (the CBA) at ¶ 30.3.4.1. Article 30.1.1 of the CBA provides, in pertinent part:

> Only an allegation that there has been a violation, misapplication,
> or misinterpretation of the terms of this Agreement shall constitute
> a grievance under the provisions of this grievance procedure.

<u>Id.</u> "[T]he genesis of arbitral authority is the contract, and arbitrators are permitted to decide

only those issues that lie within the contractual mandate." <u>Davis v. Chevy Chase Fin. Ltd.</u>, 667 F.2d 160, 165 (D.C. Cir. 1981); <u>Stromberg Sheet Metal Works, Inc. v. Wash. Gas Energy Sys., Inc.</u>, 448 F.Supp.2d 64, 67 (D.D.C. 2006). As noted above, the University argues that "whether a particular subject is arbitrable under the terms of the arbitration clause, [ ]is for the courts, not for the arbitrator to decide." Pl.'s Mot. at 11. And it is correct that the question of arbitrability–whether the parties contracted to arbitrate a particular grievance–is undeniably a legal issue for judicial determination. <u>AT & T Techs., Inc.</u>, 475 U.S. at 649. It is established case law that "unless the parties provide otherwise, a court, not an arbitrator, should resolve the jurisdictional issue of what forum should decide the merits of a claim." <u>United Indus. Workers v. Gov't of the V.I.</u>, 987 F.2d 162, 167 (3d  Cir. 1993);  <u>AT & T Techs., Inc.,</u>, 475 U.S. at 649.

"In resolving an arbitrability issue the first step in determining coverage under the arbitration clause is to ascertain whether the present dispute falls within the scope of the arbitration clause." <u>Int'l Ass'n of Machinists & Aerospace Workers, Lodge No. 1777 v. Fansteel, Inc.</u>, 900 F.2d 1005, 1010 (7th Cir. 1990). Upon reviewing the CBA here, the Court finds that its language warrants a finding that the question of whether the parties had reached agreement as to the applicability of Appendix C does not fall within the scope of the arbitration clause. As just noted, Section 30.1.1 of Article 30 of the CBA provides that "[o]nly an allegation that there has been a violation, misapplication, or misinterpretation of the terms of the [CBA] shall constitute a grievance under the provisions of this grievance procedure." Pl.'s Mot., Ex. 1 (the CBA) at Article 30.1.1. This provision is not so broad as to provide for the arbitration of any differences between the parties, <u>Fansteel</u>, 900 F.2d at 1010-11,  but limits its reach to

8

grievances that allege a violation, misapplication, or misinterpretation of the terms of the CBA. Id. "The written language embodying the terms of an agreement governs the rights and liabilities of the parties." Stromberg Sheet Metal Works, Inc., 448 F.Supp. 2d at 68-69 (citing Meshel v. Ohev Sholom Talmud Torah, 869 A.2d 343, 361 (D.C. 2005)). Thus, Section 30.1.1 affords an employee and the union the right to pursue a grievance regarding those terms that comprise the CBA. In determining the scope of an arbitrator's authority, case law in this Circuit requires that courts "look to two sources: the collective bargaining agreement, and the submission of the parties to the arbitrator." Wash.-Baltimore Newspaper Guild, Local 35 v. The Wash. Post Co., 442 F.2d 1234, 1236 (D.C. Cir. 1971) (citations omitted). Although the scope of an arbitrator's jurisdiction is defined by an agreement to arbitrate in the collective bargaining agreement, "[a]n arbitration agreement, however, need not be express, but also may be inferred from the conduct of the parties." United Indus. Workers, 987 F.2d at 168 (citing Teamsters Local Union No. 764 v. J.H. Merritt & Co., 770 F.2d 40, 42 (3d Cir. 1985)).

In this case, the University acknowledged the Union's grievance and when a resolution of it was not forthcoming, the University participated in the arbitration of the grievance. The University has not presented any evidence[4] that either before or during the arbitration proceedings it objected to the arbitrator's jurisdiction to address the stipulated issue– "Whether or not the Parties had a meeting of the minds on Appendix C, the Wage Compensation package?"

_____

[4] Although the University requested a stay and reconsideration of the arbitrator's award in its November letter to the arbitrator, it did not challenge the arbitrator's authority. Pl.'s Mot., Ex. 4 (the University Letter). Instead, the University noted that "although there [were] a number of issues it wish[ed] to address, [it] was particularly concerned about [the arbitrator's] decision to disallow the union's Chief Negotiator, Kimberly Kline, to testify as a fact witness regarding [] whether or not there was a meeting of the minds on Appendix C, between the Metropolitan Campus Police Officers Union and Howard University." Id.

9

For instance, there is no evidence in the record which suggests that while agreeing to participate in the arbitration, the University challenged the arbitrability of the grievance and made clear that it was preserving its jurisdictional challenge for eventual presentation to a court if the arbitrator ruled in the Union's favor. See Wackenhut Serv., Inc., v. United Gov't Sec. Officers of Am., Local 44, No. 05-0805, 2006 WL 889908 *1, (D.D.C. Mar. 30, 2006) (citing Madison Hotel 144 F.3d at 855 (Henderson, J., concurring in judgment); Int'l Bhd. of Elec. Workers, Local Union No. 545 v. Hope Elec. Corp., 380 F.3d 1084, 1101 (8th Cir. 2004) (citing Local Union No. 36, Sheet Metal Workers' v. Atlas Air Conditioning, 926 F.2d 770, 771-72 (8th Cir. 1991) (describing three methods which a party may employ to challenge an arbitrator's authority: "(1) object to the arbitrators' authority, refuse to argue the arbitrability issue, and proceed to the merits of the agreement; (2) seek declaratory or injunctive relief from a court prior to commencement of arbitration; or (3) notify the arbitrators of a refusal to arbitrate altogether"); Fansteel, 900 F.2d at 1009-10 (Seventh Circuit found that an employer did not waive its right to contest arbitrability in a judicial forum when it agreed to proceed with the arbitration hearing subject to its arbitrability objections); Jones Dairy Farm v. Local No. P-1236, United Food & Commercial Workers Int'l Union, 760 F.2d 173, 175 (7th Cir. 1985 ) (Seventh Circuit found that employer consented to arbitration of an issue where it "did not, while agreeing to participate in the arbitration, challenge the arbitrator's jurisdiction, and make clear that it was preserving its challenge for eventual presentation to a court if the arbitrator ruled in the union's favor. . . ."). Although the University contends that it "preserved its right to challenge the arbitrator's substantive jurisdiction before this Court by raising the contract validity issue before and during the arbitration and then filing a timely complaint to vacate the arbitration award," Pl.'s Reply at

2; see also Pl.'s Mot. at 4-6, upon review of the record it appears that it did not object to the arbitrability of whether there had been a meeting of the minds as to Appendix C. Rather, the University objected only to *whether there was a valid contract between the parties* by opposing the Union's position that there was a meeting of the minds. See Pl.'s Mot. at 3,7. And while "arbitrators derive their authority from the contractual agreement of the parties, a party may waive its right to challenge an arbitrator's authority to decide a matter by voluntarily participating in an arbitration and failing to object on the grounds that there was no agreement to arbitrate." United Indus. Workers, 987 F.2d at 168 (citing J.H. Merritt, 770 F.2d at 43); accord Jones Dairy Farm, 760 F.2d at 175 ("If a party voluntarily and unreservedly submits an issue to arbitration, he cannot later argue that the arbitrator had no authority to resolve it.") (internal citations omitted). The record and case law supports a finding that the University has failed to establish that it made and preserved its objection to the arbitrability of the grievance, and therefore, its right to contest the arbitrability of the grievance was waived.

The University relies on Hope Electrical Corp., 380 F.3d 1084, as support for its position that a party's timely filing of a motion to vacate is sufficient to preserve its right to object to the arbitrability of a grievance. Pl.'s Reply at 5. That case, however, is distinguishable. In Hope Electrical Corp., "[the employer] did not participate in arbitration, provide notice to the arbitrators of a challenge to their jurisdiction, or move to enjoin arbitration." Id. at 1101. Rather, "[the employer] waited until the arbitrators issued their written award and then filed a timely motion to vacate that award." Id. The employer appealed the district court's ruling that the employer waived any challenges to the arbitrators' jurisdiction and any substantive challenges to the arbitrators' award by failing to participate in the arbitration or challenging the arbitrators'

11

jurisdiction when the matter was before the arbitrator.  Id. at 1092.  In opposition to the Union's

position, id. at 1101, the employer argued that "a timely motion to vacate serves as an

independent, fourth method for preserving a challenge to the arbitrators' jurisdiction."  Id. at

1102.  The Eighth  Circuit, while limiting its holding to the facts of Hope Electrical Corp., found

that the employer's timely filing of the motion adequately raised and preserved the substantive

jurisdictional challenges.  Id. at 1103.  The Court emphasized that its ruling was based on there

being "no contract language expressly granting arbitrators the authority to decide substantive

jurisdictional challenges . . . ."  Id.

　　　　Here, the University acknowledged the Union's grievance and when its resolution was

not forthcoming, the University participated in the arbitration.  Pl.'s Mot. at 4.  After the

arbitrator did not render a ruling favorable to the University, it filed a motion for reconsideration

with the arbitrator and then timely filed a motion to vacate the arbitrator's award with this Court.

Pl.'s Mot., Ex. 4 (University Letter).  What distinguishes this case from Hope Electrical Corp., is

the University's participation in the arbitration proceeding, whereas the employer in Hope

Electrical Corp., refused to participate at all.  Thus, it appears that the University is seeking to

obtain two bites at the apple–arbitration and now judicial review.  Since the deferential standard

for judicial review "applies equally to an arbitrator's award arising not merely out of a collective

bargaining agreement, but also from the parties independent submission of questions ordinarily

resolved by the courts," Franklin Elec. Co. v. Int'l. Union, United Auto. Aerospace and Agric.

Implement Workers of Am. (UAW); Local No. 1000, 886 F.2d 188, 192 (8th Cir. 1989), legal

precedent leads this Court to the conclusion that the University waived its right to seek judicial

relief of the arbitrator's award, having participated in the arbitration process and then failing to

object and preserve its objection to the arbitrability of the grievance submitted to the arbitrator.

**B.      The Arbitrator's Exclusion of Evidence**

The University asserts that the arbitrator's award should be set aside on the alternative ground that the arbitrator improperly excluded the testimony of Ms. Kline.  Pl.'s Mot. at 13-17. Specifically the University argues that "[a]t the hearing, the Arbitrator excluded evidence that went directly to the question of whether the parties reached a 'meeting of the minds.' The Arbitrator's failure to consider the evidence deprived Howard University of a fair hearing and the opportunity to present its case." Id. at 13-14.  Further, the University contends that the arbitrator improperly excluded the testimony of Ms. Kline pursuant to the attorney-client privilege.  Id. at 15-16; Pl.'s Reply at 9.  The plaintiff asserts that as a result of this exclusion, Ms. Kline was prevented from testifying as to "what she meant by her February 9, 2004 email to Leroy Jenkins, which the Arbitrator admittedly did not credit because she found the email "ambiguous".  Pl.'s Mot. at 16.  In opposition, the Union  responds that "[n]othing in Ms. Kline's e-mail, which was admitted into the record and considered by the Arbitrator, nor anything in her declaration accompanying this motion, negates the legal effect of President Swygert's signature on the CBA, especially since Ms. Kline did not participate in his execution of the CBA."   Def.'s Opp. at 5.

Section 10(a) of the Federal Arbitration Act[5] permits vacatur of an arbitral award on the

---

[5] The Federal Arbitration Act does not apply to "contracts of employment . . . of workers engaged in foreign or interstate commerce."  9 U.S.C. § 1 (2000).  Section 301 of the LMRA applies to suits either for violation of a contract between an employer and a labor organization representing employees in an industry affecting commerce or for violation of a contract between such labor organizations.  29 U.S.C. § 185.  However, "federal courts have often looked to the [Federal Arbitration Act] for guidance in labor arbitration cases, especially in the wake of the holding that § 301 of the Labor Management Relations Act 1947, 61 Stat. 156, 29 U.S.C. § 185, empowers the federal courts to fashion rules of federal common law to govern '[s]uits for

(continued...)

following grounds:

> (1) where the award was procured by corruption, fraud, or undue
> means; (2) where there was evident partiality or corruption in the
> arbitrators, or either of them; (3) where the arbitrators were guilty
> of misconduct in refusing to postpone the hearing, upon sufficient
> cause shown, or in refusing to hear evidence pertinent and material
> to the controversy; or any other misbehavior by which the rights of
> any party have been prejudiced; or (4) where the arbitrators
> exceeded their powers, or so imperfectly executed them that a
> mutual, final, and definite award upon the subject matter submitted
> was not made.

9 U.S.C. § 10(a).  The plaintiff challenges the arbitrator's decision not to consider Ms. Kline's

testimony based on the attorney-client privilege arguing that she would have only testified

regarding statements made during open negotiations when representatives for both parties were

present.  Pl.'s Mot. at 13.  An arbitrator's exclusion of evidence based on attorney-client

privilege is an evidentiary ruling.  "It is well settled that the arbitrator is the judge of the

admissibility and relevancy of evidence submitted in an arbitration proceeding."  Pompano-

Windy City Partners v. Bear Stearns & Co., 794 F.Supp. 1265, 1277 (S.D.N.Y. 1992) (quotation

marks and citations omitted); see also Kruse v. Sands Bros. & Co., 226 F.Supp.2d 484, 488

(S.D.N.Y. 2002) (noting the "great deference given to arbitrator's decision to control order,

procedure and presentation of evidence by federal courts"); Nitram, Inc. v. Indus. Risk Insurers,

848 F.Supp. 162, 165 (M.D. Fla. 1994) (federal courts give great deference to arbitrator's

decision to control order, procedure, and presentation of evidence), aff'd, 141 F.3d 1434 (11th

Cir. 1998).  Further, courts are deferential to arbitrators when construing section 10(a)(3) of the

---

[5](...continued)
violation of contracts between an employer and a labor organization' under the federal labor
laws."  United Paperworkers Int'l. Union, AFL-CIO v. Misco, Inc., 484 U.S. 29, 40 n. 9 (1987)
(citing Textile Workers v. Lincoln Mills, 353 U.S. 448 (1957) (construing 29 U.S.C. § 185).

Federal Arbitration Act and have found that section 10(a)(3) requires "misconduct on the part of the arbitrator." Nicholls v. Brookdale Univ. Hosp. & Med. Ctr., No. 05-CV-2666, 2005 WL 1661093, at * 9 ( E.D.N.Y July 14, 2005). Therefore, "[e]ven assuming an error on the part of an arbitrator, it must be 'in bad faith or so gross as to amount to affirmative misconduct.'" Id. (citing United Paperworkers, 484 U.S. at 40). Courts accord substantial deference to arbitrators' decisions, which therefore cannot be overturned merely because there is disagreement with their factual findings or ultimate decisions. See Major League Baseball v. Garvey, 532 U.S. 504, 509 (2001) (finding that the fact that a court is convinced an arbitrator committed serious error does not suffice to overturn his decision); Wallace v. Buttar, 378 F.3d 182, 190 (2d Cir. 2004) (finding that "[a] federal court cannot vacate an arbitral award merely because it is convinced that the arbitration panel made the wrong call on the law") ; Lessin v. Merrill Lynch, No. Civ. A. 5-171, 2006 WL 1096623, at *4 (D.D.C. Mar. 31, 2006) (finding that errors of fact and law are not sufficient to vacate an arbitration award). Here, legal authority does not warrant overturning the arbitrator's award based on the exclusion of Ms. Kline's testimony.

The University's reliance on Gulf Coast Indus. Workers Union v. Exxon Co., 70 F.3d 847 (5th Cir. 1995) as support for its position is misplaced. In Gulf Coast Industrial Workers Union, a union appealed a district court's grant of summary judgment in favor of the employer, which resulted in the vacatur of an arbitration award. Id. at 849-50. There, an employer discovered marijuana in the automobile of one of the plaintiff's members when he consented to a search of the vehicle after the employer's canine contraband detection service detected the presence of contraband in the car while conducting a routine search on the employer's premises for drugs and alcohol. Id. at 848. The employer subsequently suspended and later terminated the

15

plaintiff's member after he refused to take a drug test.  Id. at 849.  During the arbitration hearing,

when the employer attempted to qualify the Substance Abuse Report ("SAR"), which contained

the result of the test which detected the marijuana, as a business record, the arbitrator informed

the employer that it did not have to be qualified, because it was already in evidence.  Id. at 849.

The arbitrator later refused to consider the SAR as evidence on the ground that it "did not

establish that the substance was marijuana because it was hearsay, and did not even have the

status of a business record."  Id. One of the basis for the district court's grant of summary

judgment was its conclusion that "the arbitrator lulled Exxon into believing that the SAR was

admitted into evidence and then refused to consider it on the ground that it was unreliable

hearsay."  Id. at 850.

    The Fifth Circuit affirmed the district court's vacatur of the arbitration award, agreeing

that the arbitrator engaged in misconduct within the scope of Section 10 of the Federal

Arbitration Act  by refusing to hear evidence pertinent and material to the controversy, i.e.,

whether the employer had reasonable cause to order the employee to submit to drug testing.  Id.

at 849-50.  Thus, the Fifth Circuit found that "not only did the arbitrator refuse to consider

evidence of the positive drug test, he prevented Exxon from presenting additional evidence by

misleading it into believing that the SAR had been admitted as a business records."  Id. at 850.

    Here, although the arbitrator excluded the testimony of Ms. Kline, the arbitrator did not

preclude the University from presenting additional evidence to demonstrate that the parties

agreed that the adoption of Appendix C would be deferred until further discussions were

conducted.  For instance, the University was not precluded from introducing the testimony of

President Swygert, who executed the CBA on behalf of the University.  However, President

Swygert did not participate in the arbitration proceedings and the University did not provide an explanation for his non-participation. Pl.'s Mot., Ex. 3 (Award) at 10.  And, the arbitrator found "the absence of President Swygert's testimony . . . significant because it made it difficult to ascertain his state of mind when he signed the agreement." Id.  Therefore, "without knowing President Swygert's intent and state of mind, the arbitrator [found that his absence and lack of testimony warranted the conclusion] that he knowingly and willingly entered [into] a valid and binding agreement when he signed the contract, which contained Appendix C." Id.

In addition, the arbitrator considered Ms. Kline's email to Leroy Jenkins and concluded that "the e-mail dated February 9, 2004, from Attorney Kline to Attorney Jenkins inquiring whether or not he had 'any comments/suggestions regarding the salary bands' alone is ambiguous." Pl.'s Mot., Ex. 3 (Award) at 9.  The arbitrator found the email ambiguous for several reasons.  First, the arbitrator found that "this inquiry could relate to its upcoming implementation of the salary scale." Id.  Second, the arbitrator found that "the subject matter of the e-mail [], entitled 'finishing contract,' implies that details after ratification were needed." Id.  Third, the arbitrator found that "the preceding sentence also refers to a request for 'Performance Appraisal that is to be used for the guards,' which would again appear to suggest implementation of a ratified contract." Id.  9-10.

The Court finds that the record supports the arbitrator's determination that the email is ambiguous and does not support a finding that there was a meeting of the minds between the parties as to Appendix C.  Even though the University submitted a declaration explaining the purpose of her February 9, 2004 email to Mr. Jenkins, the arbitrator specifically provides an explanation for her findings regarding Kline's email, but not her declaration.  And, courts have

held that arbitrators are not even required to explain the basis for their awards. See Sargent v.
Paine Webber Jackson & Curtis, Inc., 882 F.2d 529, 532 (D.C. Cir. 1989) ("forcing arbitrators to
explain their award even when grounds for it can be gleaned from the record will unjustifiably
diminish whatever efficiency the process now achieves"); Wilemijn Houdstermaatschappij v.
Standard Microsystems Corp., 103 F.3d 9, 12 (2d Cir. 1997) (noting that an arbitrator is not
required to provide an explanation for her decision); A.G. Edwards & Sons, Inc. v. McCollough,
967 F.2d 1401, 1403 (9th Cir. 1992) (arbitrators are not required to state the reasons for their
decisions). Thus, "if a ground for the arbitrator's decision can be inferred from the facts of the
case, the award should be confirmed." Sobel v. Hertz, Warner & Co., 469 F.2d 1211, 1216 (2d
Cir. 1972). After a review of the record in this case, this Court finds that the arbitrator's decision
not to permit Ms. Kline to testify was a ruling that should not be disturbed and that she acted
within the permissibly scope of her discretion in not giving much consideration to Ms. Kline's
declaration. In this regard, the Court notes that "[a]rbitrators are not required to hear all the
evidence proffered by a party." See Tempo Shain Corp. v. Bertek, Inc., 120 F.3d 16, 20 (2d Cir.
1997). Thus, even if an arbitrator excludes pertinent and material evidence, "[n]ot all failures to
receive relevant evidence constitute misconduct, requiring a court to vacate an arbitration
award." Spine Surgery, Inc., v. Sands Brothers, Inc., 393 F.Supp.2d 1138, 1143 (W.D. Okla.
2005) (citing Newark Stereotypers' Union No. 18 v. Newark Morning Ledger Co., 397 F.2d 594,
599 (3d Cir. 1968). Instead, a federal court may vacate an arbitrator's award only if the
arbitrator's refusal to hear pertinent and material evidence deprives a party of a "fundamentally
fair hearing." United Mine Workers of Am. v. Marrowbone Dev. Co., 232 F.3d 383, 385 (4th
Cir. 2000); Bowles Fin. Group, Inc. v. Stifel, Nicolaus & Co., 22 F.3d 1010, 1012 (10th Cir.

1994); Flender Corp. v. Techna-Quip Co., 953 F.2d 273, 280 (7th Cir. 1992); Hoteles Condado Beach, La Concha & Convention Ctr. v. Union De Tronquistas Local 901, 763 F.2d 34, 40 (1st Cir. 1985). "[A] fundamentally fair hearing requires only notice, opportunity to be heard and to present relevant and material evidence and argument before the decision makers, and that the decision makers are not infected with bias." Bowles Fin. Group, Inc., 22 F.3d at 1013.

Here, (1) the University was given the opportunity to be heard; and (2) although the arbitrator excluded the testimony of Ms. Kline, it was the plaintiff's decision not to present the testimony of President Swygert, who could have presented the most pertinent testimony concerning the matter about which Ms. Kline would have testified, including but not limited to, whether President Swygert did not intend to approve Appendix C when he executed the CBA. Therefore, the plaintiff has failed to present sufficient evidence to support a finding that the arbitrator is guilty of misconduct by refusing to hear evidence pertinent and material to the controversy before her. In addition, there is no evidence that the arbitrator exhibited any bias during the proceedings. In fact, the University specifically noted in its motion for a stay and reconsideration that although it disagreed with the arbitrator's award in this matter, the "[University has] historically respected [the arbitrator's] decisions regarding the University's matters and continue to do so." Pl.'s Mot., Ex. 4 (University Letter). On the record, the Court is compelled to conclude that the arbitrator's exclusion of the testimony of Ms. Kline does not provide a basis for vacating the arbitration award. Accordingly, the arbitration award in favor of the defendant is confirmed and the plaintiff's motion to vacate is denied.

### III. CONCLUSION

Based on the foregoing reasons, this Court finds that the plaintiff's motion to vacate is

denied and the arbitration award in favor of the defendant is affirmed.[6]

   **SO ORDERED.**


                                        REGGIE B. WALTON
                                        United States District Judge

---

   [6] An order consistent with this memorandum opinion shall be filed contemporaneously herewith.